**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRETT P. CLARK,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil Action No. 05-445** |
| ) | |
| ) | |
| **JO ANNE BARNHART,** ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**November 3, 2005**

> **I.      Introduction**

Plaintiff, Brett P. Clark, brings this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) of the Social Security Act ("Act") seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income (SSI) under title XVI of the Act. 42 U.S.C. §§ 1381-1383f. As is customary in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment for this Court's consideration.

After careful consideration of the Administrative Law Judge's ("ALJ's") decision, the briefs submitted by the parties, and the entire record, this Court finds that the ALJ's findings are supported by substantial evidence. The Court, therefore, will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the determination of the ALJ/Commissioner.

## II.      Procedural History

Mr. Clark applied for SSI on October 7, 2002, claiming that he had been disabled since January 1, 1992 due to blindness in his right eye, arthritis in his hands and shoulders, depression, and anxiety. Plaintiff's application was denied by the state agency initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ). Mr. Clark, represented by counsel and a vocational expert (VE), appeared and testified before ALJ Levine at an administrative hearing on October 28, 2003.

The ALJ denied Mr. Clark's request for benefits because his impairments did not prevent him from performing the light jobs identified by the VE. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Mr. Clark's request for review. This timely appeal followed.

## III.      Statement of the Case

## A.      Factual Background

Mr. Clark, 45, was born in March 1960, and was 43 years old at the time of the ALJ's decision to deny him SSI. Mr. Clark has a high school education and graphic arts training, but spent the majority of his working career as an automotive mechanic and construction laborer. Mr. Clark alleges he became disabled on January 1, 1992 due to blindness in his right eye, arthritis in his hands and shoulders, depression, and anxiety. The plaintiff does not cite a defining moment when he became disabled; rather, it seems that a series of events and maladies culminated in his alleged disablement. Mr. Clark currently

2

lives alone in a room that he rents. His only source of income is public welfare benefits.

Prior to filing the claim at issue, Mr. Clark had filed for and received SSI, effective February 12, 1993. During the period prior to and for five years following the initial award of SSI, Mr. Clark, by his own admission, had difficulty abstaining from alcohol. Despite this fact, ALJ Smith from the 1996 hearing found that even without alcoholism, Mr. Clark would still qualify for SSI under Section 1614(a)(3)(A) of the Social Security Act. ALJ Smith determined that Mr. Clark had an Affective Disorders characterized by:

  a. Anhedonia or pervasive loss of interest in almost all activities, or
  b. Appetite disturbance with change in weight, or
  c. Sleep disturbance, or
  d. Psychomotor agitation or retardation, or
  e. Decreased energy, or
  f. Feelings of guilt or worthlessness, or
  g. Difficulty concentrating or thinking.

R at 50–69.

ALJ Smith also concluded that Mr. Clark met the following "B" criteria of the listings:

  1. Extreme restrictions of activities of daily living
  2. Extreme difficulties in maintaining social functioning
  3. Constant deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and
  4. Continual episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.

R at 70.

Mr. Clark continued to receive SSI until October 2000, when his benefits were suspended because of excess resources.[1] The following October, Mr. Clark's benefits were terminated pursuant to regulations. 20 C.F.R. § 416.1335

---

[1] Mr. Clark's mother bequeathed him $20,000.

(providing that eligibility for benefits terminates following 12 consecutive months of benefit suspension). Mr. Clark was also incarcerated between January 2001 and September 2002, during which time, he was ineligible for benefits. 20 C.F.R. § 416.1325 (providing that a recipient is ineligible for benefits for the first full calendar month in which he or she is a resident of a public institution and for so long as such individual remains a resident of a public institution).

**B.    Physical Medical History**

Mr. Clark's pertinent medical history begins in September of 2000 when he was seen at The Uniontown Hospital by David Lawrence, M.D., where Mr. Clark presented with a facial laceration that he sustained in a bar fight. Dr. Lawrence found no evidence of hemorrhage or infarct, nor any mass lesions on the brain. R at 129. The next medical record is from September 4, 2002, when Mr. Clark was an inmate of the Pennsylvania Department of Corrections where he was incarcerated for a DUI conviction. The physical examination was performed by Brian Dan, a physician assistant, who found that Mr. Clark's only ailment was poor dentition.[2]

During Mr. Clark's subsequent parole following his release from prison, Robert A. Woolhandler, M.D., consulting physician for the Fayette County Drug and Alcohol Commission, performed a consultation/physical examination on Mr. Clark on October 17, 2002 and reported that he had "no major medical problems except osteoarthritis." R at 139. Mr. Clark, the doctor observed, presented with "joint pain [in the] right shoulder, [and] stiffness in the fingers." R at 141. The

---

[2] Arrangement of teeth.

4

report further stated that Mr. Clark had "major depressive disorder since 1992 and has been on various medications …." R at 139.

Dr. Woolhandler, whose specialty is general practice, determined that Mr. Clark had a Global Assessment of Functioning ("GAF") Scale score of 35. According to the DSM-IV, a person with a GAF score of 35 has symptoms summarized as: "Some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relationships, judgment, thinking, or mood (e.g., depressed avoids friends, neglects family, unable to work…."[3] In his diagnostic consultation report, Dr. Woolhandler did not note any of the symptoms consistent with a GAF score of 35. Dr. Woolhandler noted that while Mr. Clark had a history of alcohol dependence, he had not had a beer since January 3, 2001, was eating and sleeping well, and was attending AA meetings twice a day. R at 139.

Between August 1999 to September 2003, Mr. Clark received routine medical care at Centerville Clinics. R at 144. In October 2002, Mr. Clark complained of hand and shoulder pain and a subsequent anti-nuclear antibody (ANA) panel was positive for arthritis. R at 142. A May 2003 physical examination revealed that Mr. Clark had full range of motion in his neck and no edema or tenderness in his back or limbs. A repeat ANA panel was negative in January 2004.

---

[3] The GAF scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by clinicians to indicate an overall judgment of a person's psychological, social, and occupational functioning.
   *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R)* 34 (4th ed. 2000).

Regarding Mr. Clark's "blindness," records from Gallo Eye Surgical Associates, dated February 4, 2003 reveal that Mr. Clark has 20/30 vision with correction. R at 151.

David E. Seaman, M.D., a rheumatologist, treated and evaluated Mr. Clark on February 21, 2003 because of complaints of chronic arthralgia[4] in the hands and shoulders. Dr. Seaman reported that, "There is absolutely no objective evidence to support total or permanent disability from a rheumatologic standpoint." R at 205.

Jeffrey R. James, M.D., treated and performed a consultative examination on Mr. Clark on February 28, 2003 and found that Mr. Clark likely had osteoarthritis and musculoskeletal low back pain. R at 153. Dr. James further stated that Mr. Clark had "some discomfort related to this and it would be understandable from his long years of heavy labor type of work that he have this kind of wear-and-tear arthritis, which may limit his ability to carry out physical labor in the future [*sic*]." R at 153. Dr. James, however, found no evidence of nerve damage, significant joint abnormalities, or range of motion impairments. R at 153.

On a "Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities" checklist, Dr. James found that Mr. Clark could perform occasional bending, kneeling, stooping, crouching, balancing, and crawling; could lift 2–3 pounds occasionally; and could carrying 2–3 pounds occasionally. Dr. James noted no limitations for Mr. Clark for standing and walking, sitting, pushing and pulling, or environmental restrictions. R at 154.

---

[4] Joint pain.

The Eye Center, where Clark was evaluated by Dr. David Alan in March 2003 determined that Clark had 20/25 vision in the right eye and 20/20 in his left. R at 221.

Alfred Mancini, M.D., a state agency medial consultant, performed a residual functional capacity ("RFC") assessment of Mr. Clark's medical records on March 29, 2003, and determined that Mr. Clark could lift and/or carry twenty pounds occasionally, and ten pounds frequently with limitations on overhead reaching; could stand and/or walk for about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; and push and/or pull without limitation. R at 175–76. Dr. Mancini also found that while Mr. Clark's far acuity in his right eye was limited, Mancini rejected Mr. Clark's claim of blindness because it was not supported by the results of a recent eye examination. R at 175–76.

On May 13, 2003, V. Ramakumar, M.D., a state agency physician, performed a consultative RFC assessment and also found that Clark was capable of performing a limited range of light work. Dr. Ramakumar wrote in his report that:

> The claimant (Mr. Clark) participates in daily activities such as caring for personal needs and performing routine household activities. He also relates fairly well with others…. [T]he overall evidence suggests that he has the ability to care for himself and maintain his home. He does light house cleaning and small loads of laundry. He is able to shower, dress, change and make the bed without resting. He goes to shopping, movies and goes out to eat. He belongs to church and library. R at 201.

Dr. Ramakumar found Mr. Clark's claims of physical limitations to be only partially credible. R at 201.

### C.    Psychological Medical History

As far back as October 2002, Emily Pressley, D.O., treated and performed a psychiatric evaluation on Mr. Clark and assessed his GAF score at 55.[5] Clark claimed to have been depressed for several years and to have decreased energy. Although Dr. Pressley diagnosed Mr. Clark with "major depressive disorder, recurrent, moderate; [and] history of alcohol dependence (in remission)," she still considered Mr. Clark to have only moderate symptoms. Dr. Pressley recommended individual therapy with Tracy Naponic, M.A. In November and December 2002, Clark reported feeling less depressed and in February 2003, Dr. Pressley noted that Clark's mood was stable.

In April 2003 Sanford Golin, Ph.D., a state agency psychological consultant examined the plaintiff and completed a Psychiatric Review Technique form and determined that Mr. Clark had an affective disorder, which did not manifest at listing level severity. Dr. Golin found that Mr. Clark had mild restrictions in his ability to perform activities of daily living, mild difficulties in his ability to maintain social functioning, and moderate difficulties maintaining concentration, persistence, or pace. R at 177–194.

On September 4, 2003, Manuel Reich, D.O., performed a psychiatric evaluation at ACS Psychological Associates. Mr. Clark complained of

---

[5] A GAF score between 51 and 60 is summarized as "Moderate symptoms (e.g., flat effect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)."
    *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R)* 34 (4th ed. 2000).

depression, mood swings, and difficulty with sleep and appetite. Dr. Reich assessed Mr. Clark's GAF score at 50,[6] but did not observe or at least did not report any specific symptoms that are categorized as "serious symptoms."[7] Dr. Reich observed that Mr. Clark's speech was logical and goal-oriented, his cognitive functioning was grossly intact, his mood was anxious and depressed, but appropriate. R at 213.

In October 2003, Ms. Naponic wrote a letter to Mr. Clark's attorneys stating:

> It is my opinion that Mr. Clark's symptoms are credible and consistent given our findings. He does meet the criteria for Major Depressive Disorder, and he exhibited these symptoms upon the initial visit/Diagnostic Interview. It is my opinion that Brett (Mr. Clark) would not benefit from full-time employment at this time, as his relationships with authority figures are poor and depressive symptoms and anger management skills continue to be volatile. R at 252.

### D.   Summary of Plaintiff's Testimony

Plaintiff testifies that between 1972 and 1992 he worked full time at several different auto body shops, with a short stint as a construction laborer in either 1987 or 1988. R at 40. Mr. Clark testifies that since 1992 he has not held a job. He claims that the primary reason he cannot work is his depression, which he describes as follows:

> I can't sleep. I stay inside a lot, sometimes, like, a couple days. I can't focus and concentrate on things. Some days I don't eat right. Some days I don't have any appetite. It feels like a—kind of like a—it's hard to describe. Like a dark cloud over me some days, you

---

[6] A GAF score between 41 and 50 is summarized as "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

*Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R)* 34 (4th ed. 2000).

[7] *Id.*

know. I just can't, like, get motivated. I can't get things in order. R at 42.

Plaintiff testifies that in the past his problems with anger management caused him to lose jobs and girlfriends. He also claims that he stopped drinking alcohol in January of 2001. R at 45. Mr. Clark also claims that he suffers from osteoarthritis that causes stiffness and discomfort in his hands, wrists, and shoulders. R at 47–8.

Plaintiff testifies that he has abnormal sleep patterns and that he sleeps anywhere from three to ten hours a night. R at 48–9. Plaintiff says he lives alone, performs his own household chores, attends weekly AA meetings, and is attempting to get his "driving record restored." R at 52. Mr. Clark has begun restoring relations with his sister after three years of not speaking, because, he believes, "things are going better, you know, since I put the drink down. I don't have any problems with people. I pretty much get along." R at 53. Plaintiff also testifies that he believes he "may be able" to perform a job that did not require much interaction with the public. He claims, however, that though he will eventually "get something (job related) going…," that he would like to get his depression and physical ailments "a little more under control." R at 56.

**E.    Vocational Expert Testimony**

A vocational expert (VE) testified at Mr. Clark's hearing. In response to a hypothetical scenario about an individual who could perform light work with no continuous fine fingering skills, no exposure to unprotected heights or dangerous machinery, and only occasional stooping, crawling, crouching, bending, and

climbing; and assuming that the individual required entry-level work, with limited exposure to other people, the VE testified that the individual could perform jobs such as machine tender and office cleaner. R at 57.

## F.   The ALJ's Findings

The ALJ made the following specific findings:

1.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.  The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 416.920(c) with depression and osteoarthritis, impairments that are severe within the meaning of the Regulations (*See* 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4). The claimant also has non-severe impairment including right eye blindness and high cholesterol.

3.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 with evidence of adequate functional ability and no more than mild to moderate mental limitations as discussed in the body of this decision.

4.  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. § 416.927).

6.  The claimant has the residual functional capacity for light work with no heights, no dangerous machinery, no continuous fine finger skills, with occasional postural movements, and with entry level work dealing with things vs. people (SSR 96-5p).

7.  The claimant is unable to perform any of his past relevant work (20 C.F.R. § 416.965).

8.  The claimant is a "younger individual between the ages of 18 and 44" (20 C.F.R. § 416.963).

9.  The claimant has a "high school (or high school equivalent) education" (20 C.F.R. § 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. § 416.968).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 C.F.R. § 416.967).

12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rules 202.21 and 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs are set forth in the body of this decision as given by the vocational expert. (SSR 00-4p).

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 416.920(f)).

R at 27–28.

## G.    Issues

In his brief supporting his motion for summary judgment, plaintiff raises the following challenges to the ALJ's determination: 1) that the ALJ ignored findings made by a previous ALJ, who determined that Mr. Clark was eligible for SSI; 2) that the ALJ overemphasized Mr. Clark's positive response to medication because the clinical compliance setting is different from a work setting; and 3) that the ALJ did not give proper weight to Mr. Clark's subjective complaints of disabling limitations.

## XIV.   Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[8] and 1383(c)(3).[9]  Section 405(g)

---

[8] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55

---

42 U.S.C. § 405(g).

[9] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59

(3d Cir. 1988). The Court of Appeals for the Third Circuit has referred to this

standard as "less than a preponderance of the evidence but more than a mere

scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum*

*v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.

1995).  "A single piece of evidence will not satisfy the substantiality test if the

Secretary ignores, or fails to resolve, a conflict created by countervailing

evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v.*

*Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  The substantial evidence standard

allows a court to review a decision of an ALJ, yet avoid interference with the

administrative responsibilities of the Commissioner.  *See Stewart v. Secretary of*

*HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

       In making this determination, the district court considers and reviews only

those findings upon which the ALJ based his or her decision, and cannot rectify

errors, omissions or gaps in the medical record by supplying additional findings

from its own independent analysis of portions of the record which were not

mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7

(3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to

consider all of the relevant and probative evidence, attempted to rectify this error

by relying on medical records found in its own independent analysis, and which

were not mentioned by the ALJ. This runs counter to the teaching of *SEC v.*

*Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an

administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). He or she must also give serious consideration to the claimant's subjective complaints of pain, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir. 1986). In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to

resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. §§ 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a

medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Finally, pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of

19

inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at  1070-71 (emphasis

added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to

pain is reasonably supported by medical evidence, neither the Commissioner nor

the ALJ may discount claimant's pain *without contrary medical evidence*.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*,

829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658

(W.D. Pa. 1998).  "Once a claimant has submitted sufficient evidence to support

his or her claim of disability, the Appeals Council may not base its decision upon

mere disbelief of the claimant's evidence.  Instead, the Secretary must present

*evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.

1981) (where claimant's testimony is reasonably supported by medical evidence,

the finder of fact may not discount the testimony without contrary medical

evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992)

(emphasis added), *cert. denied* 507 U.S. 924 (1993).

### XV.   Discussion

<u>ALJ Levine relied on independent expert testimony combined with his own</u>
<u>interpretation and understanding of the facts of the case to render a decision</u>
<u>based on substantial evidence.</u>

First, plaintiff claims that ALJ Levine ignored findings made by a previous

ALJ, who determined that Mr. Clark was eligible for SSI, and that had ALJ Levine

given proper weight to the previous ALJ's eligibility determination, he would find

that Mr. Clark is disabled according to SSA guidelines. Plaintiff further contends

that ALJ Levine gave selective credence to the previous ALJ's determination —

ignoring portions of that determination that favored a disability eligibility

determination, and concentrating on a single sentence that, in effect, said Mr.

Clark could improve his mental impairments with treatment. R at 67. This Court disagrees with plaintiff's claim of error in this regard. It is evident in ALJ Levine's written findings and analysis that he did not rely on the assertion of the previous ALJ, but rather relied on independent expert testimony presented in the record, combined with his own interpretation and understanding of the facts before him. ALJ Levine systematically addressed the wide breadth of testimony by experts who presented evidence as to Mr. Clark's ability to physically and psychologically perform gainful employment.

Further, it does not follow that because a previous ALJ found that Mr. Clark was eligible for SSI that the current ALJ must now find that Mr. Clark is eligible. Plaintiff's argument is that because he was deemed disabled before, absent a magic bullet, he still must be deemed disabled. There are no SSA guidelines, however, that state that once eligible, a recipient is always eligible. On the contrary, the rules have temporal limitations demonstrated in the language that mandate potential recipients have an "impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). By mandating the twelve-month period of disability preceding the award of benefits, it is clear that the legislature recognized the obvious fact that severe disabilities are sometimes transitory and/or can be treated successfully. *Cf. Burley v. Barnhart*, No. 04-4568, 2005 U.S. Dist. LEXIS 19803, at *14–15 (E.D. Pa. Sept. 9, 2005) (Assignment of low GAF scores immediately following a traumatic event "represented only an assessment for a specific

exacerbation."); *See also Hillman v. Barnhart*, 48 Fed. Appx. 26 (3d Cir. 2002) (Circuit Court of Appeals for the Third Circuit determined that District Court did not err in denying disability benefits despite plaintiff's having had a GAF score of 35 in his medical history, because the low score was assigned immediately following plaintiff's admittance to a facility for alcohol detoxification — and plaintiff's GAF score at time of the hearing was 50).

Plaintiff further contends that ALJ Levine unfairly relied upon Mr. Clark's history of alcohol abuse as a mitigating factor. Plaintiff contends that ALJ Levine insinuates that at times when Mr. Clark's GAF scores dipped, it was because of a relapse. Plaintiff's brief supporting a motion for summary judgment relies almost entirely on perceived similarities between the instant case and *Bennet v. Barnhart*, 264 F. Supp. 2d 238 (W.D. Pa. 2003), in which the court found that the ALJ overstepped his bounds and made medical determinations instead of relying on expert testimony.

Plaintiff contends that ALJ Levine similarly overstepped his bounds by determining, without a medical foundation, that Mr. Clark's GAF scores were relatively low because he was still drinking alcohol. ALJ Levine wrote, "[T]he global assessment of functioning scores (GAF) even by the treating practitioners were consistent with no more than moderate mental impairment longitudinally, although they have dipped on occasion with suspected alcohol abuse or lack of medical compliance." R at 25. The Court agrees that the ALJ should not have speculated as to the reasons for the dip in GAF scores, but this error is not fatal to the ALJ's determination.

Bennet supports Plaintiff's assertion that speculative inferences from medical evidence and/or inaccurate assumptions can taint an ALJ's findings. ALJ Levine's determination that plaintiff is ineligible for disability benefits, however, does not explicitly or implicitly rely on Mr. Clark's use of or abstinence from alcohol as a disqualifying factor. ALJ Levine's insinuations about Mr. Clark's continuing use of alcohol are merely commentary and not a basis of his decision.

That decision was predicated on substantial evidence of record that the ALJ evaluated, and he explained why a one-time GAF score of 35 did not compel a finding of disability. Plaintiff had a GAF score of 55, R at 166, when examined by Dr. Pressley the day prior to receiving the GAF score of 35 by Dr. Woolhandler. R at 139. Recently, Dr. Golin determined that Mr. Clark had an affective disorder that did not reach listing severity. R at 181, 184, 191–92. Golin then assessed plaintiff under the "B" criteria under Listing 12.04 (Affective Disorders) and determined that plaintiff had only mild restrictions in his ability to perform activities of daily living, mild difficulties maintaining concentration, persistence or pace, that there was insufficient evidence of episodes of decompensation, and the evidence did not establish part "C" criteria under Listing 12.04. R at 191–92. Most recently Plaintiff had a GAF score of 50 on September 4, 2003 when examined by Dr. Reich, who performed a psychiatric evaluation on Mr. Clark.[10]

---

[10] While Mr. Bennet and Mr. Clark both had similar GAF scores, the plaintiff in Bennet, in the absence of alcohol abuse, continued to suffer significant symptoms of depression including: crying spells, suicidal thoughts, being overwhelmed by stress, argumentative, negative, and reluctant to socialize. 264 F.Supp.2d at 29–30. Mr. Clark's symptomatology is much less severe than was Mr. Bennet's.

ALJ Levine considered all of the record evidence and explained his reasons for finding Plaintiff capable of performing a significant range of light work, and his finding is based on substantial evidence.

ALJ Levine did not consider Mr. Clark's response to medication as a substantial factor in his denial of disability benefits.

Plaintiff next contends that ALJ Levine overemphasized his capacity to perform gainful employment based on Mr. Clark's positive response to medication, because the clinical compliance setting is less demanding and stressful than a work setting. Nowhere in the ALJ's findings, however, does he rely on Mr. Clark's positive response to medication as a factor contributing to his determination. In fact, the ALJ's only mentions of Mr. Clark's response to medication are to say that he has no adverse side effects to any medications that his doctors have prescribed him, R at 22, and again when he writes, "As noted by the claimant's therapist, the claimant's symptoms are moderate while taking antidepressants, and the claimant has been started on Celexa and Trazodone…." R at 24. The plaintiff ascribes too much significance to these comments, and his assertion that the ALJ improperly relied on Plaintiff's positive response to medications is not supported by the ALJ's analysis.

ALJ Levine gave proper weight to Mr. Clark's subjective complaints of disabling limitations and properly explained why he did not find Mr. Clark's testimony entirely credible.

Plaintiff next contends that the ALJ erred because he did not give proper weight to Mr. Clark's subjective complaints of disabling limitations as is required

25

by 20 C.F.R. §§404.1529 and 416.929. ALJ Levine explains in some detail the reasons he relied more on the objective testimony offered by the medical experts and the VE than on Mr. Clark's subjective assertions of pain. ALJ Levine, summarizing his reasons for not giving great weight to Mr. Clark's subjective complaints, writes:

> The Administrative Law Judge has considered the claimant's subjective complaints with regard to pain, precipitation and aggravating factors, medication and other treatment, any functional restrictions and claimant's daily activities (20 C.F.R. §§404.1529 and 416.929). *Even so, the claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the medical history, the findings made on examination, and the collective reports of the reviewing, treating and examining practitioners.*(emphasis added)

R at 22.

An ALJ need only give great weight to the plaintiff's subjective complaints if they are supported by competent evidence, *Schaudeck v. Commissioner*, 181 F.3d 429 at 433 (3d Cir. 1999) ("An ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979))). Because competent medical evidence supports the ALJ's credibility evaluation, and his explanation is comprehensive, the ALJ did not err in discounting Plaintiff's subjective complaints. (*See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), which set the standard that "an examiner's findings should be as comprehensive and analytical

as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based.")

## VI.     Conclusion

This Court has reviewed the ALJ's finding of fact and has determined that his findings are supported by substantial evidence. Accordingly, this Court will deny plaintiff's motion for summary judgment, will grant the Commissioner's motion for summary judgment, and will affirm the decision of the ALJ/Commissioner.

An appropriate order will follow.

_____
Arthur J. Schwab

Cc: All counsel of record

Peter M. Suwak, Esquire
Pete's Surplus Building
P.O. Box  #1
Washington, PA 15301

Rebecca Haywood, Esquire
Assistant U.S. Attorney
Western District of PA
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRETT P. CLARK,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-445** |
| | ) | |
| | ) | |
| **JO ANNE BARNHART,** | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**ORDER OF THE COURT**

**AND NOW**, this 3rd day of November, 2005, in accordance with the foregoing memorandum opinion, it is HEREBY ORDERED as follows:

1. Defendant's Motion for Summary Judgment (document no. 5) is GRANTED.

2. Plaintiff's Motion for Summary Judgment (document no. 11) is DENIED.

3. The decision of the Commissioner is AFFIRMED, and Judgment is hereby entered in favor of the Commissioner and against plaintiff.

_____
Arthur J. Schwab
United States District
Judge

cc: All counsel of record

Peter M. Suwak, Esquire
Pete's Surplus Building
P.O. Box  #1
Washington, PA 15301

Rebecca Haywood, Esquire
Assistant U.S. Attorney

Western District of PA
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219